**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES HOUSE          )
OF REPRESENTATIVES         )
Washington, D.C. 20515         )
                                )
            Plaintiff,    )
                                )
                                )       CIVIL ACTION NO. _____
     v.                         )
                                )
                                )
THE UNITED STATES DEPARTMENT )
OF COMMERCE; and WILLIAM M. DALEY, )
in his capacity as Secretary of the United )
States Department of Commerce   )
14th & Constitution Avenues, N.W.  )
Washington, D.C. 20230        )
                                )
      and                  )
                                )
BUREAU OF THE CENSUS, an agency within )
the United States Department of Commerce; and )
JAMES F. HOLMES, in his capacity as Acting )
Director of the Bureau of the Census )
Room 2049, Building 3       )
Washington, D.C. 20233-0100   )
                                )
            Defendants.   )

FILED

FEB 20 1998

NANCY MAYER WHITTINGTON CLERK
U.S DISTRICT COURT

CASE NUMBER   1:98CV00456

JUDGE:  Royce C. Lamberth

DECK TYPE:  Three Judge Court

DATE STAMP:  02/20/98

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

For 200 years, the government officials who have taken the decennial census for the purpose of legislative apportionment have conducted an actual enumeration of the populace, by attempting to count all the people, in accordance with the mandates of the Constitution and Congress. Defendants now seek to abandon that course. Defendants have adopted a program for conducting the 2000 census that has no precedent in our Nation's history. Defendants do not



plan to count every person who may be found.  Instead, Defendants plan to use population

estimates based upon statistical methods commonly referred to as "sampling" for the

apportionment of the House of Representatives.  Congress has determined that Defendants' plan

poses such serious risks to the people and the political institutions of this Country that it adopted

legislation, which the President signed, authorizing either House of Congress to seek immediate

declaratory and injunctive relief in this Court.  The House of Representatives brings this action

pursuant to that specific authorization, and respectfully requests this Court to enjoin Defendants

from using sampling to determine the population for the purpose of apportionment, and to

declare that such use of sampling is unlawful because the Constitution and the Census Act, 13

U.S.C. § 195, forbid it.

## PARTIES

1.     Plaintiff United States House of Representatives is directly affected and

aggrieved by Defendants' unlawful decision to use sampling in connection with the 2000 census

to determine the population for the purpose of apportionment.  Suit by the House to challenge

this use of sampling is specifically authorized by § 209 of the Department of Commerce, Justice,

State, the Judiciary, and Related Agencies Appropriations Act, 1988, P.L. 105-119, 111 Stat.

2440 (Nov. 26, 1997) (the "1998 Appropriations Act").  This suit has been commenced at the

direction of Newt Gingrich, Speaker of the House of Representatives, pursuant to § 209(g) of the

1998 Appropriations Act.

2.     Defendant United States Department of Commerce is a department within the

executive branch of the United States and an agency of the United States.

2

3.    Defendant William M. Daley is the Secretary of Commerce.  He is a defendant solely in his official capacity.

4.    Defendant Bureau of the Census is an agency within the Commerce Department.

5.    Defendant James F. Holmes is the Acting Director of the Bureau of the Census.  He is a defendant solely in his official capacity.

## JURISDICTION AND VENUE

6.    This action arises out of Defendants' adoption of a program to use sampling in the 2000 census to determine the population of the United States for the purpose of apportioning Members of the House of Representatives among the several States.  Defendants' program violates Article I, § 2, cl. 3, and Section 2 of the Fourteenth Amendment to the United States Constitution, as well as the Census Act.  The Court has jurisdiction of this action pursuant to § 209 of the 1998 Appropriations Act and 28 U.S.C. § 1331.

7.    Plaintiff seeks declaratory, injunctive, and other appropriate relief under § 209(b) of the 1997 Act.

8.    Plaintiff is entitled to have this action heard and determined by a three-judge district court pursuant to § 209(e)(1) of the 1998 Appropriations Act.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## STATEMENT OF FACTS

10.  Section 2 of the Fourteenth Amendment to the United States Constitution provides that Members of the House of Representatives are to be "apportioned among the several States according to their respective numbers."

11. Pursuant to Article I of the Constitution, the population of the United States is determined for the purpose of the apportionment of Representatives by means of a decennial census. U.S. Const., Art. I, § 2, cl. 3. Although the decennial census and other periodic censuses are and historically have been used to collect a great deal of information that is used for various purposes, the sole constitutional purpose of the decennial census is to enable the apportionment of Representatives among the several States.

12. Article I of the Constitution requires that the decennial census be an "actual Enumeration" of the population. U.S. Const., Art. I, § 2, cl. 3.

13. The Fourteenth Amendment to the Constitution requires that Representatives be "apportioned among the several States according to their respective numbers, counting the whole number of persons in each State." U.S. Const., Amend. XIV, § 2.

14. The Constitution entrusts Congress with a mandatory duty to conduct the census. Congress is required to "direct by law" the "Manner" in which the census is conducted, and the Constitution further requires that the census be taken "within every . . . Term of ten years." U.S. Const., Art. I, § 2, cl. 3.

15. Pursuant to Art. I, § 2, cl. 3 of the Constitution, Congress has directed the Secretary of Commerce (the "Secretary") and the Bureau of the Census, an agency within the Department of Commerce, to conduct the census. 13 U.S.C. §§ 2, 4, 21, 141(a). Congress expressly prohibited the Department of Commerce from using sampling to determine the population for the purpose of apportionment. The Census Act provides that, "[e]xcept for the determination of population for purposes of apportionment, the Secretary shall, if he considers it

feasible, authorize the use of the statistical method known as 'sampling' in carrying out the provisions of this title." 13 U.S.C. § 195 (emphasis added).

16.  The Census Act provides further that the decennial census is to be a determination of the population as of the first day of April of the year in which the census is taken.  13 U.S.C. § 141(a).  The Secretary is required within nine months thereafter -- i.e., no later than December 31 -- to tabulate the "total population by States . . . as required for the apportionment of Representatives in Congress among the several States."  13 U.S.C. § 141(b).

17.  After receiving the Secretary's report, the President is required to "transmit to the Congress a statement showing the whole number of persons in each State . . . and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives."  2 U.S.C. § 2a(a).  The President's statement to Congress historically has incorporated, without modification, the figures reported to him by the Secretary.

18.  Upon Congress's receipt of the statement required by 2 U.S.C. § 2a(a), the Clerk of the House of Representatives is required to "send to the executive of each State a certificate of the number of Representatives to which such State is entitled."  2 U.S.C. § 2a(b).

19.  Each State that is entitled to more than one Representative, based upon the certificate transmitted to it by the Clerk of the House of Representatives, must then "establish congressional districts equal in number to the number of Representatives to which it is entitled." 2 U.S.C. § 2c.  Representatives "may only be elected from districts so established."  Id.

20.  The constitutional requirement that the decennial census must, for the purpose of apportionment, be an "actual Enumeration" of the population derived by "counting the whole number of persons in each State" precludes the use of sampling to estimate the

population.  The use of sampling to estimate the population for the purpose of apportionment is also prohibited by the Census Act, 13 U.S.C. § 195.

21.  There have been 21 decennial censuses.  The first was taken in 1790.  In the early days, obtaining an accurate count was difficult, because the population was thinly spread over vast amounts of territory, much of which was unsettled, even hostile.  Transportation was slow and often hazardous.  Later censuses were handicapped by the civil strife leading up to and including the Civil War and Reconstruction.  Massive waves of immigration and internal migrations have at times made the task particularly burdensome.  Notwithstanding these and other difficulties, until now, the executive branch officials to whom Congress has entrusted the critical responsibility of obtaining a valid and lawful enumeration of the population for the purpose of apportionment have always established a program designed to count the entire population.  These officials have never before set out to estimate the population through sampling.

22.  Before and after the most recent amendment to 13 U.S.C. § 195, in 1976, the Department of Commerce and the Bureau of the Census interpreted the Census Act and the Constitution to prohibit the use of sampling to determine the population for the purpose of apportionment.

23.  On June 12, 1997, concerned by indications that Defendants intended to use sampling in lieu of an actual enumeration in the 2000 census, Congress enacted a statute that required the Department of Commerce to provide Congress with a comprehensive written report detailing the Department's plans for the 2000 census, including any use of sampling.  1997

Emergency Supplemental Appropriations Act for Recovery from National Disasters, Pub. L. No.
105-18, 111 Stat. 158, 217 (1997).

24.  In July 1997, the Department issued its REPORT TO CONGRESS -- THE
PLAN FOR CENSUS 2000 (the "Census 2000 Report").  The Census 2000 Report states
unequivocally that Defendants' plan includes the use of sampling to determine the population of
the United States in the 2000 census for the purpose of apportioning Members of the House of
Representatives among the several States.  Pursuant to this plan, Defendants will, inter alia, (1)
use a methodology they refer to as "sampling for nonresponse follow-up," under which
Defendants will make a traditional headcount of the people in what they believe to be 90 percent
of U.S. households and estimate the number of people in the remaining households; and (2) use a
methodology they refer to as "Integrated Coverage Measurement," under which Defendants will
change the census numbers based upon a later, random sample of housing units, employing
classifications based, inter alia, on race, ethnicity, gender, and age.

25.  In July 1997, the Department of Commerce published its Census 2000
Operational Plan, which further confirms Defendants' adoption of a program to use sampling in
the 2000 decennial census to determine the population of the United States for the purpose of
apportionment.

26.  On November 26, 1997, President Clinton signed the 1998 Appropriations
Act into law.  In § 209(a) of the 1998 Appropriations Act, Congress made the following findings:

> (1)  it is the constitutional duty of the Congress to ensure that the
> decennial enumeration of the population is conducted in a manner
> consistent with the Constitution and laws of the United States;
>
> (2)  the sole constitutional purpose of the decennial enumeration of
> the population is the apportionment of Representatives in Congress
> among the several States;

(3)  section 2 of the 14th article of amendment to the Constitution clearly states that Representatives are to be "apportioned among the several States according to their respective numbers, counting the whole number of persons in each State";

(4)  article I, section 2, clause 3 of the Constitution clearly requires an "actual Enumeration" of the population, and section 195 of title 13, United States Code, clearly provides "Except for the determination of population for purposes of apportionment of Representatives in Congress among the several States, the Secretary shall, if he considers it feasible, authorize the use of the statistical method known as 'sampling' in carrying out the provisions of this title.";

(5)  the decennial enumeration of the population is one of the most critical constitutional functions our Federal Government performs;

(6)  it is essential that the decennial enumeration of the population be as accurate as possible, consistent with the Constitution and laws of the United States;

(7)  the use of statistical sampling or statistical adjustment in conjunction with an actual enumeration to carry out the census with respect to any segment of the population poses the risk of an inaccurate, invalid, and unconstitutional census;

(8)  the decennial enumeration of the population is a complex and vast undertaking, and if such enumeration is conducted in a manner that does not comply with the requirements of the Constitution or laws of the United States, it would be impracticable for the States to obtain, and the courts of the United States to provide, meaningful relief after such enumeration has been conducted; and

(9)  Congress is committed to providing the level of funding that is required to perform the entire range of constitutional census activities, with a particular emphasis on accurately enumerating all individuals who have historically been undercounted, and toward this end, Congress expects —

(A)  aggressive and innovative promotion and outreach campaigns in hard-to-count communities;

(B)  the hiring of enumerators from within those communities;

(C)  continued cooperation with local government on address list development; and

(D) maximized census employment opportunities for individuals seeking to make the transition from welfare to work.

27.  Section 209(b) of the 1998 Appropriations Act provides that "[a]ny person aggrieved by the use of any statistical method in violation of the Constitution or any provision of law (other than this Act), in connection with the 2000 or any later decennial census, to determine the population for purposes of apportionment or redistricting of Members in Congress, may in a civil action obtain declaratory, injunctive, and any other appropriate relief against the use of such method." For these purposes, the 1998 Appropriations Act includes among aggrieved persons "(1) any resident of a State whose congressional representation or district could be changed as a result of the use of a statistical method challenged in the civil action; (2) any Representative or Senator in Congress; and (3) either House of Congress." Id. at § 209(d).

28.  The 1998 Appropriations Act provides that, for purposes of § 209, the Census 2000 Report and the Census 2000 Operational Plan "shall be deemed to constitute final agency action regarding the use of statistical methods in the 2000 decennial census, thus making the question of their use in such census sufficiently concrete and final to now be reviewable in a judicial proceeding." § 209(c)(2).

29.  The use of sampling to determine the population for the purpose of apportionment is prohibited by the Constitution, which requires that an "actual Enumeration" be obtained by "counting the whole number of persons in each State." The use of sampling to determine the population for the purpose of apportionment is also prohibited by the Census Act, enacted by Congress pursuant to its constitutional duty by law to "direct" the manner in which the decennial census is taken.

30.  Because Defendants do not plan to make an actual count of the population, there will be no way to gauge after the fact what the result would have been if the census had been taken by the traditional headcount method.  Indeed, Defendants have intentionally designed the 2000 census to be a "one-number" census in an effort to prevent any judicial review or post-census remedy.  It is highly likely, however, that the use of sampling will alter the result of the census in a manner that affects constitutional reapportionment.

31.  The House of Representatives has an important stake in this controversy because the procedures used to conduct the census directly affect the composition of its membership, and because the Constitution vests Congress with the obligation to conduct an "actual Enumeration" of the population every 10 years and to direct the manner in which the census is taken.  Defendants' actions will cause direct and concrete injuries to legally cognizable interests of the House that are redressable through the relief sought in this action.

32.  Defendants' adoption of a procedure that uses sampling will cause concrete harm by depriving the House of Representatives of the important institutional protections afforded by the constitutional and statutory mandate that an actual count be obtained.  The use of sampling creates a substantial risk or likelihood, inter alia, (1) that the composition of the House will not conform to the requirements of the Constitution and laws in the next decade; (2) that there will be a successful legal challenge to the apportionment that could disrupt the House's operations as a body; (3) that the public will not have confidence in census numbers derived from estimates, which will undermine public respect for the House; and (4) that the census numbers could be politically manipulated to alter the composition of the House.

10

33. Defendants' adoption of a procedure that uses sampling will also cause concrete harm to the House of Representatives by preventing it from fulfilling the constitutional and statutory duty imposed upon Congress to conduct the census and ensure that the House can be timely apportioned in accordance with law.  Defendants' decision to abandon the traditional and required method for conducting the census will prevent the House from receiving the population numbers it must have to perform its mandate to effectuate the lawful reapportionment of the House.  This suit is necessary, and specifically authorized by law, to vindicate the special authority of Congress to direct the manner in which the census is taken, and to prevent Defendants from undermining that authority by disregarding congressional direction.

34. Defendants' adoption of a procedure that uses sampling may cause a conflict between (1) the statutory duty of the Clerk of the House of Representatives (as an officer of the House subject to its direction and control) to transmit to the States the President's statement showing the "whole number of persons in each State" and the number of Representatives to which each State is entitled, and (2) the constitutional duty of the House to ensure that the census and ensuing reapportionment is conducted in accordance with the Constitution and laws of the United States.  In the absence of injunctive or declaratory relief from this Court, the House may be forced to violate one of these legal duties.

35. Congress recognized the particularized interest of the House of Representatives in ensuring a valid and constitutional decennial census by providing in § 209(d) of the 1998 Appropriations Act that the House is a party aggrieved by the use of any statistical method in violation of the Constitution or laws of the United States to determine the population

11

for the purpose of apportionment, with a right to seek in a civil action declaratory, injunctive, or other appropriate relief against the use of such method.

36. As the Congress found in § 209(a)(8) of the 1998 Appropriations Act, "the decennial enumeration of the population is a complex and vast undertaking, and if such enumeration is conducted in a manner that does not comply with the requirements of the Constitution or laws of the United States, it would be impracticable for the States to obtain, and the courts of the United States to provide, meaningful relief after such enumeration has been conducted."

37. Recognizing that there is a substantial public interest in insuring through a prompt and final declaration of rights that the population determination resulting from the 2000 census -- which is projected to cost nearly $4 billion -- will lawfully form the basis for apportionment over the course of the ensuing decade, Congress provided for expedited litigation of this matter. See 1998 Appropriations Act, § 209(e).

## COUNT ONE

38. Plaintiff United States House of Representatives repeats and realleges the allegations of paragraphs 1 through 37 of the complaint.

39. Defendants have adopted a program for the 2000 census that uses sampling, inter alia, for nonresponse follow-up and Integrated Coverage Measurement, in lieu of relying upon an actual count of the people of the United States, to determine the population for the purpose of apportioning Members of the House of Representatives among the several States.

40. The use of sampling in the decennial census to determine the population for the purpose of apportioning Members of the House of Representatives among the several States violates the Constitution and the Census Act.

41. The House of Representatives is aggrieved by Defendants' program to use sampling in the 2000 decennial census in violation of the Constitution and laws of the United States. Defendants' actions will cause direct and concrete injuries to legally cognizable interests of the House that are redressable through the relief sought in this action.

42. Newt Gingrich, the Speaker of the House of Representatives, has directed the commencement of this suit by the House of Representatives, in accordance with § 209(g) of the 1998 Appropriations Act.

43. The issuance of declaratory and injunctive relief is necessary to prevent irreparable injury to the House of Representatives.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States House of Representatives prays that:

a.    The Court convene a three-judge panel to hear and determine this case pursuant to § 209(e)(1) of the 1998 Appropriations Act;

b.    The Court declare that Defendants' use of sampling for nonresponse follow-up, for Integrated Coverage Measurement, or in any other way, in the 2000 census to determine the population for the purpose of apportioning Representatives among the several States would violate Article I, § 2, cl. 3, and Section 2 of the Fourteenth Amendment to the United States Constitution;

   c. The Court declare that Defendants' use of sampling for nonresponse follow-up, for Integrated Coverage Measurement, or in any other way, in the 2000 census to determine the population for the purpose of apportioning Representatives among the several States would violate the Census Act, 13 U.S.C. §§ 1 et seq.;

   d. The Court permanently enjoin Defendants from using sampling for nonresponse follow-up, for Integrated Coverage Measurement, or in any other way, in the 2000 census to determine the population for the purpose of apportioning Representatives among the several States; and

   e. The Court award to Plaintiff such additional and further relief as the Court deems appropriate.

Respectfully submitted this 20th day of February, 1998,

LATHAM & WATKINS
   Maureen E. Mahoney
   (D.C. Bar. No. 343111)
   Richard P. Bress
   (D.C. Bar. No. 457504)
1001 Pennsylvania Avenue, N.W., Suite 1300
Washington, D.C.  20004-2505
(202) 637-2200

   Attorneys for United States House of
   Representatives

OF COUNSEL

GERALDINE R. GENNET
   General Counsel
KERRY W. KIRCHER
   Deputy General Counsel
MICHAEL L. STERN
   Senior Counsel
CAROLYN BETZ
   Assistant Counsel

   United States House of Representatives
   Office of General Counsel